UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAILORED FUND CAP LLC,

      Plaintiff,

  -v-            5:20-CV-762

RWDY, INC., doing business as RWDY;
RACKBACK SERVICES LLC, doing business
as RACKBACK SERVICES; TRIPPING LLC,
TRIPPING; SPUD SYSTEMS, LLC doing
business as SPUD SYSTEMS; COMPLETION
TECH, LLC, doing business as COMPLETION
TECH; ZIPPER COMPLETION LLC, doing
business as ZIPPER COMPLETION;
MULTI-WELL, LLC, doing business as
MULTI-WELL; PUSHER, LLC, doing business
as PUSHER; and BRIAN THOMAS OWEN,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEVEN W. WELLS<br>Attorneys for Plaintiff<br>2510B Hall Road<br>Lancaster, New York 14086 | STEVEN W. WELLS, ESQ. |
| BERKOVITCH & BOUSKILA, PLLC<br>Attorneys for Plaintiff<br>80 Broad Street Suite 3303<br>New York, New York 10004 | ARIEL BOUSKILA, ESQ. |
| BARITZ, COLMAN LAW FIRM<br>Attorneys for Defendants<br>The Woolworth Building<br>233 Broadway, Suite 2020<br>New York, New York 10279 | JOHN STEWART, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

I.  **INTRODUCTION AND BACKGROUND**

On February 12, 2020, plaintiff Tailored Fund Cap LLC ("Tailored Fund" or "plaintiff") entered into a Merchant Agreement ("Merchant Agreement") with defendants RWDY, Inc. ("RWDY" or "the debtor defendant"); Rackback Services LLC; Tripping LLC, Tripping; Spud Systems LLC; Completion Tech, LLC; Zipper Completion LLC; Multi-Well, LLC; and Pusher, LLC.  Dkt. 1-1 ("Compl."), ¶ 4.  The founder of those companies, defendant Brian Thomas Owen ("Owen" or the "individual defendant", together "defendants"), also agreed to guarantee that his companies would abide by the Merchant Agreement.[1]  *Id.* ¶ 6.  According to that agreement, defendants received a purchase price of $5,000,000.00 from plaintiff. Dkt. 8-2, p. 1.  In exchange, plaintiff was permitted to withdraw $7,495,000.00 from defendants' accounts receivable in weekly installments of $315,000.00.  *Id.*

But as might be gleaned by Tailored Fund filing suit, the Merchant Agreement did not go according to plan.  Instead, defendants only paid $637,800.00 of the fees they owed, leaving $6,857,200.00 on the balance and $2,550.00 in fees unpaid, amounting to a total debt of $6,859,750.00, not including interest.  Compl. ¶¶ 9, 12.  Despite plaintiff's demands for payment, no more funds have been paid.  *Id.* ¶ 10.

Apparently skeptical of its chances of recovering what it was owed under the Merchant Agreement through any other means, Tailored Fund filed a complaint in New York State Supreme Court, Ontario County (the "state court") on March 17, 2020.  Compl. pp. 4, 9.

---

[1] "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) (internal citations omitted).  Because the present motions to remand and transfer this case contemplate this Court's jurisdiction, the Court also "may look outside the pleadings to other evidence in the record[.]" *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994).

2

Plaintiff alleged four causes of action:   (1) breach of the Merchant Agreement against RWDY; (2) personal guarantee against Owen; (3) unjust enrichment against all defendants; and (4) conversion against all defendants.  *Id.* at 6-8.

Only two days later, the parties signed a stipulation of settlement, laying out a payment plan they all hoped defendants would be able to follow.  Dkt. 8-3, ¶ 2.  But anticipating the potential for that hope to come up empty, the stipulation of settlement also included provisions allowing Tailored Fund to move for default judgment under N.Y. C.P.L.R. § 3215(i)[2] ("§ 3215(i)") should defendants again fail to keep the payment schedule.  *Id.* ¶ 9.  In the same vein, in agreeing to the settlement defendants acknowledged that "they will have no right to cure any [future] missed payments . . . ."  *Id.* ¶ 8.

According to Tailored Fund, the repayment began smoothly enough, with defendants making the first three weekly payments of $16,666 per week.  Dkt. 8-4, ¶ 14.  But when the time came to increase the weekly payments to $315,000, plaintiff alleges defendants again bogged proceedings down by making off-schedule payments of less than the amount due.  *Id.* ¶¶ 14, 16.  In total, defendants apparently paid only $365,096.70, leaving a remaining balance of $6,494,653.30.  *Id.* ¶ 17.

Obviously dissatisfied with this turn of events, Tailored Fund moved for default judgment against defendants under § 3215(i) on June 4, 2020.  Dkt. 8-4, pp. 1-2.  Once its attorney's fees and costs were factored in, plaintiff demanded $8,118,771.63 in total damages.  *Id.* at 1.  On June 22, 2020, RWDY filed for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Louisiana.  Case

---

[2] Section 3215(i) provides that:  "[w]here . . . a stipulation of settlement is made, providing, in the event of failure to comply with the stipulation, for entry without further notice of a judgment in a specified amount with interest . . . the clerk shall enter judgment on the stipulation[.]"  Typically, entering a judgment by stipulation is a ministerial action that the clerk carries out as a matter of course.  *See id.*; Dkt. 8-1, ¶ 15.  However, according to plaintiff, the COVID-19 pandemic interfered with plaintiff's default judgment, forcing it to formally ask the state court to impose the judgment.  Dkt. 8-1, ¶ 16.

3

No. 20-10616.  As a result, the parties agree that any further action against the debtor defendant has been automatically stayed.  11 U.S.C. § 362(a).  As for the remaining defendants, the state court set a deadline of July 8, 2020 to file opposition to plaintiff's motion for default judgment.  Dkt. 8-5.

Instead of responding to Tailored Fund's motion, defendants removed the action to this Court under 28 U.S.C. § 1466(b) and Fed. R. Bankr. P. 9027(a)(3).  Dkt. 1, ¶ 14.  Defendants relied on 28 U.S.C. § 1334 to establish this Court's jurisdiction and argued that plaintiff's claims were "core" bankruptcy proceedings—or at least related to RWDY's bankruptcy—as defined by 28 U.S.C. § 157.  *See id.* ¶ 7.  To the extent that any of plaintiff's claims do not fall into either category, defendants rely on supplemental jurisdiction under 28 U.S.C. § 1367 to embrace the remaining claims.  *Id.* ¶ 10.

In order to avoid missing out on § 3215(i)'s automatic grant of default judgment, Tailored Fund moved to remand this case to the state court under 28 U.S.C. §§ 1334, 1447(c) & 1452(b) on August 7, 2020.  Dkt. 8.  In addition to opposing plaintiff's remand motion, defendants also cross-moved to transfer the case to the Bankruptcy Court for the Western District of Louisiana on August 25, 2020.  Dkt. 11.  Those motions, having been fully briefed, will now be decided on the basis of the parties' submissions without oral argument.

## II.     **LEGAL STANDARD**

A cause of action before a state court may be removed by the defendant if "the district courts of the United States have original jurisdiction[.]"  28 U.S.C. § 1441(a).  But a defendant's ability to remove an action "is strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns."  *Amcat Glob., Inc. v. Yonaty*, 192 F. Supp. 3d 308, 311

(N.D.N.Y. 2016) (internal citations and quotation marks omitted).  By extension, "all doubts should be resolved in favor of remand." *Id.* (citation omitted).

"Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) (quoting *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). Thus, "[a] district court must remand a case to state court if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (internal citation and quotation marks omitted).

Additionally, a cause of action removed to federal court under 28 U.S.C. § 1452(a) due to that cause of action's relation to a bankruptcy may be remanded "on any equitable ground." 28 U.S.C. § 1452(b).

## III. DISCUSSION

There are two ultimate issues raised by the parties' cross-motions:  (1) whether any claims against defendants arise under or are related to RWDY's bankruptcy so as to confer jurisdiction on this Court and render removal proper; and (2) whether the Court should remand or transfer any claims over which it properly has jurisdiction.

"The bankruptcy removal provisions, 28 U.S.C. §§ 1452 and 1334, provide that most civil actions related to a bankruptcy case may be removed to federal court." *Cal. Pub. Emps'. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 96 (2d Cir. 2004).  Specifically, a party may "remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce . . . [its] police or regulatory power" if the district court where the civil action is pending has jurisdiction over that claim or cause of action under 28 U.S.C. § 1334.  28 U.S.C. § 1452(a).

5

Section 1334 confers to district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). At the least, claims arise under title 11 if they: (1) invoke a substantive right created by federal bankruptcy law; (2) involve a cause of action created or determined by a statutory provision of title 11; (3) arise under the Bankruptcy Code; or (4) involve a case under title 11 or a "core proceeding" arising under title 11. *In re Housecraft Indus. USA*, 310 F.3d 64, 69 (2d Cir. 2002).

"The core/non-core determination is made on a claim-by-claim basis."[3] *In re New England Nat., LLC*, 2013 WL 812386, at *24 (Bankr. D. Ct. Mar. 5, 2013). The Second Circuit requires courts to consider two factors in determining whether a contract action is a core proceeding: "(1) whether a contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005). The independence of a proceeding depends on its nature. *Id.*

"A proceeding's nature can be core if either[:] (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding[;] or (2) the proceeding directly affects a core bankruptcy function." *Millennium Seacarriers*, 419 F.3d at 97. In analyzing the nature of a proceeding, the Court must keep in mind that core proceedings cover a broad range of cases. *In re Charter Comms.*, 409 B.R. 649, 654 (S.D.N.Y. 2009) (noting that courts consistently give an expansive interpretation to core proceedings).

If that test sounds subjective, that is because to a certain extent it is. *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003) (noting that the "distinction between

---

[3] Because the foundational facts are the same for each claim, the Court will nevertheless consider the nature of the claims on a party-by-party basis. Moreover, because the only relevant distinction among the parties in the core/non-core analysis is RWDY's status as a debtor, the Court will consider plaintiff's claims against all other defendants as one whole.

6

core and non-core is somewhat subjective and contextual"). Nevertheless, this much is obvious: if "a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips Constructors, Inc. v. City of Burlington*, 45 F.3d 702, 705 (2d Cir. 1995). Conversely, if a plaintiff has not filed a notice of claim, and both the contract and the dispute around it arose before the debtor filed for bankruptcy, typically that claim is not core. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, --- B.R. ---, 2020 WL 5600851, at *4 (S.D.N.Y. Sept. 18, 2020) (finding that dispute's arising before bankruptcy "weigh[ed] heavily against core status").

Tailored Fund argues that none of its claims are either "core" proceedings or related to a core proceeding within the meaning of bankruptcy law, and that as a result removal under 28 U.S.C. § 1452(a) was improper. Instead, plaintiff paints its claims as pure state law claims that predate RWDY's bankruptcy filing and are entirely too distant from it to qualify as core claims.

For their part, defendants argue that the Court properly has jurisdiction because Tailored Fund's claims are core claims, being inextricably tied to the bankruptcy RWDY was compelled to file for in the face of the debt defendants owed plaintiff. As to the non-debtor defendants, defendants note that the settlement agreement makes all defendants jointly and severally liable to plaintiff, and the debtor defendant is the sole source of the others' income, because Owen owns and operates each company together. Dkt. 11-1, ¶¶ 1-2, 6. As defendants would have it, this means that any assessment of the liability of one defendant would interfere with the debtor defendant's estate. Failing that, defendants insist that their claims must at least be related to a core bankruptcy proceeding given the tight-knit relationship between the defendants.

As to RWDY, the Second Circuit's decision in *S.G. Phillips Constructors* effectively forecloses defendants' argument that Tailored Fund's claims against it are core. 45 F.3d at 705. That case also interrogated whether the breach of a contract formed before the debtor filed for bankruptcy was a core or non-core proceeding, and found the "determinative" factor to its holding that the claim was core was its plaintiff's filing of a notice of claim in the bankruptcy court. *Id.* Much like in *S.G. Phillips*, this case involves a pre-petition contract, but unlike that case, plaintiff has yet to file a notice of claim. *Id.*

Because the determinative element that made the claims in *S.G. Phillips Constructors* core is lacking in this case, RWDY will have a great deal of difficulty establishing that Tailored Fund's claims against it are core. 45 F.3d at 705. Similarly, the parties' dispute over the Merchant Agreement also predates the debtor defendant's filing for bankruptcy, further counselling against holding plaintiff's claims against it to be core. *Zohar*, 2020 WL 5600851, at *4.

Defendants' arguments to the contrary are unavailing. Principally, defendants argue that Tailored Fund's claims against RWDY are core because they "directly affect" the bankruptcy in that those claims instigated the bankruptcy and are among the more substantial claims against the debtor defendant. *See In re Millennium Seacarriers*, 419 F.3d at 97. But the problem with this reasoning is that plaintiff's claims do not affect the functioning of the bankruptcy proceeding itself. In fact, the automatic stay that currently applies to plaintiff's claims against the debtor defendant means that until and unless plaintiff files a notice of claim in the bankruptcy court, its claims against the debtor defendant will do nothing at all, let alone affect the bankruptcy.

Of course, defendants may argue that Tailored Fund's claim will necessarily become core if it proceeds at all, because the automatic stay precludes it from advancing its claims on

8

any other field. But that argument ignores the possibility that plaintiff may decide simply to sit the bankruptcy out and gamble that the debtor defendant will still have the funds to pay it at the conclusion of the case. *See In re City of Stockton*, 909 F.3d 1256, 1278 n.14 (Friedland, J., dissenting) (noting capacity of potential creditors to wait until conclusion of bankruptcy before pressing their claims). By extension, if plaintiff desires, it can avoid ever transforming its claim into a core proceeding.

This Court cannot establish jurisdiction over Tailored Fund's claims on a contingent basis, and thus until and unless plaintiff makes the affirmative choice to file a notice of claim, its claims against RWDY cannot be core claims. *See, e.g.*, *In re Argus Grp. 1700, Inc.*, 206 B.R. 737, 748 n.17 (E.D. Pa. 1996) (collecting cases for proposition that pre-petition state law tort claims are "at most . . . non-core" if plaintiff does not file notice of claim).

Obviously, if Tailored Fund's claims against RWDY are not core, its claims against the non-debtor defendants similarly cannot qualify as core proceedings. Defendants insist that because each defendant is either a subsidiary of the debtor defendant or, in Owen's case, its owner and founder, plaintiff's claims against all defendants are core. However, that all defendants are allegedly jointly and severally liable for the same breach and share the same income does not by itself mean that plaintiff's claims against the other defendants directly affect the debtor defendant's bankruptcy.

By "joint and several liability," New York courts mean that every tortfeasor "is responsible for the full amount" of the judgment against a group of co-tortfeasors "regardless of [its respective] culpability." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1372 (N.Y. 1992). However, if a joint tortfeasor pays more than its equitable share of damages, it may "recover the excess from the other tortfeasors" through contribution. *Id.* In other words, as Tailored Fund correctly argues, any satisfaction of the potential judgments by defendants

9

other than RWDY would only reduce the debtor defendant's liability. Alternatively, to whatever extent those defendants cannot make any payments on any judgment, the debtor defendant's liability would remain unchanged. *Id.* (noting that each tortfeasor is responsible for full judgment).

Additionally, defendants' argument that Tailored Fund is trying to circumvent the bankruptcy by diminishing RWDY's resources through attacking its subsidiaries carries little weight for the core/non-core inquiry. Even if the Court were to hold that plaintiff's claims against all defendants were core proceedings, that would not somehow entitle defendants to a stay of proceedings unless defendants requested an extension of the stay. *See, e.g.*, *Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can be extended to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." (internal quotation marks omitted)). But even if defendants did request the stay to reach all of them, the extension inquiry is not contingent on the core/non-core distinction in any case, placing defendants' argument safely beside the point.[4] *Id.*

In other words, defendants have failed to identify a legitimate bankruptcy function that any of Tailored Fund's claims would directly affect. Accordingly, none of plaintiff's claims are core.

However, finding plaintiff's claims to be non-core does not end the inquiry. Even a non-core claim affords jurisdiction under 28 U.S.C. § 1334(b) so long as the claim is still "related to" a case arising under title 11. A "non-core" claim may nevertheless be related to a bankruptcy proceeding if its outcome "may have a 'conceivable effect' on the bankruptcy

---

[4] Of particular relevance to this case, an extension of the stay is possible where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . ." *Queenie*, 321 F.3d at 282 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

case." *In re AOG Ent., Inc.*, 569 B.R. 563, 574 (S.D.N.Y. 2017); *see In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114-15 (2d Cir. 1992) ("[L]itigation falls within a bankruptcy court's 'related to' jurisdiction if it 'has a significant connection with a pending bankruptcy proceeding such that its outcome might have any conceivable effect on the bankrupt estate.").

Although defendants failed to carry the day on establishing that Tailored Fund's claims are core proceedings, defendants have met their burden of clearing the more modest hurdle that those claims are related to a bankruptcy proceeding. As for RWDY itself, most courts confronting facts like these have found that a pre-petition tort claim against a debtor qualifies as a "related proceeding." *See, e.g.*, *Argus Grp.*, 206 B.R. at 748 n.17 (collecting cases noting that pre-petition tort claims against debtor are non-core but related to bankruptcy).

As for the non-debtor defendants, even setting their relationship with RWDY to the side, a satisfied claim against the non-debtor defendants would reduce the debtor defendant's obligation under New York's joint and several liability rules. *Sommer*, 593 N.E.2d at 1372 (noting that tortfeasor under New York joint and several liability may seek contribution from co-tortfeasors for payment of judgment beyond its share, implying that each tortfeasor need only pay a share of the debt if others are liable). As a result, any payment by the non-debtor defendants would positively affect the debtor defendant's liability, which would relate the claims against the non-debtor defendants to the bankruptcy proceeding.

Alternatively, recognizing that any resources expended by the non-debtor defendants to satisfy their obligations would allegedly come from RWDY's pocket, a more nuanced approach would not change the outcome. The debtor defendant's expenditures in trying to defend its co-defendants would limit its options in establishing a plan by limiting the amount of resources it could distribute to its creditors. Accordingly, defendants have successfully established that the non-debtor defendants' claims are related to the bankruptcy, and this

11

Court properly has jurisdiction over all of plaintiff's claims. 28 U.S.C. § 1334(b) (providing district courts with jurisdiction over claims relating to a title 11 case).[5]

Perhaps sensing the possibility of this outcome, Tailored Fund has advocated that if its claims against defendants are deemed related claims, they should be remanded under 28 U.S.C. § 1334(c)(2)'s mandatory abstention provision.

Section 1334(c)(2) requires that a removal court abstain from hearing a claim if: (1) a remand motion was timely brought; (2) "the proceeding in federal court is based upon a state law claim"; (3) the proceeding is related to a bankruptcy proceeding, but does not arise under title 11 or arise in a title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court. *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 54 (S.D.N.Y. 2011) (internal citations and quotation marks omitted).

From the outset, Tailored Fund's motion was timely, coming exactly thirty days after defendants' removal. Moreover, the parties do not dispute that plaintiff's complaints are composed entirely of a suite of state law claims. In addition, the Court has just determined that plaintiff's claims against all defendants are related to RWDY's bankruptcy, but do not arise under title 11 or in a title 11 case. Thus, plaintiff has proven the first three factors of the mandatory abstention inquiry. *Visan*, 458 B.R. at 54.

However, the fourth element appears to cause a problem for Tailored Fund. The defendants have at least made a claim that this Court could also have diversity jurisdiction over this case. Dkt. 11-1, ¶ 29.

---

[5] Because the Court has original jurisdiction over each of plaintiff's claims, it cannot have supplemental jurisdiction over those claims because supplemental jurisdiction by definition only exists in the absence of original jurisdiction for some claims but it does for others in the same case or controversy. *See* 28 U.S.C. § 1367(a). The Court thus need take no position on whether it would have supplemental jurisdiction over any of plaintiff's claims in the absence of original jurisdiction.

However, nowhere in defendants' notice of removal do they rely on diversity jurisdiction. Nor could they. The deadline to remove on the basis of diversity had long passed by the time defendants attempted to remove. *See* 28 U.S.C. § 1446(b) (imposing thirty-day time limit on removal from date basis for removal jurisdiction becomes apparent); *compare* Compl. 9 (dating plaintiff's complaint at March 17, 2020), *with* Dkt. 1 (removing plaintiff's complaint to federal court on July 8, 2020). Because "[a] notice of removal may not be sustained on a ground of jurisdiction not stated in that notice," plaintiff has also adequately established the fourth element of 28 U.S.C. § 1334 being the sole basis for jurisdiction. *Visan*, 458 B.R. at 58-59 (finding sole basis of jurisdiction to be § 1334 in assessing mandatory abstention where defendant did not remove case that apparently met diversity requirements on basis of diversity jurisdiction).

The fifth element is also met, because Tailored Fund initially filed suit in New York state court. Finally, plaintiff has established that its claims against the non-debtor defendants can be timely adjudicated in state court, because it is entitled to default judgment or, as defendants argue, at worst summary judgment. Especially because remand to the state court would entitle plaintiff to default judgment by stipulation under § 3215(i), these claims could likely be resolved swiftly in state court.

As for RWDY, although the automatic stay precludes a rapid resolution of plaintiff's claims against it, the stay is not dispositive for three reasons. First, and perhaps most importantly, the burden of showing that abstention is not required is defendants', and they have made no arguments at all as to whether the state court could not timely resolve plaintiff's claims against the debtor defendant. *See Multibank, Inc. v. Access Glob. Cap. LLC*, 594 B.R. 618, 629 (S.D.N.Y. 2018) (noting that party opposing abstention must demonstrate incapability of state court to resolve case quickly).

13

Second, the timeliness inquiry does not exist in the abstract, but instead hinges on the relative openness of the dockets of the state and federal courts and their corresponding capacity to address the case promptly. *Multibank*, 594 B.R. at 629 (noting that comparison between state and federal dockets is essential to timely resolution inquiry). There is no indication that the state court's docket is so burdened as to preclude its considering Tailored Fund's claims swiftly. Third and finally, there is no pressing need for plaintiff's claims to be resolved before the state court could reach it, again especially when those claims are stayed. *Id.* (noting that immediate need for resolution prior to state court reaching case may prove inability of state court to timely resolve case).

Accordingly, defendants have failed to show that Tailored Fund's claims against them could not timely be resolved, and the sixth and final element of mandatory abstention is met. Therefore, plaintiff's complaint must be remanded to the New York State Supreme Court, Ontario County. *See, e.g.*, *Visan*, 458 B.R. at 58-60 (remanding under mandatory abstention state law corporate waste, breach of fiduciary duty, negligence, conversion, and unjust enrichment claims which were related to bankruptcy proceeding but not core despite potential for diversity jurisdiction).

## IV. CONCLUSION

The only agreement among the parties in this case is that not one of them wishes for this Court to dispose of Tailored Fund's claims against defendants. In that limited sense, all parties will get what they asked for. However, defendants' motions to transfer must be denied, because the Court must decline to exercise removal jurisdiction over any of plaintiff's claims. The complaint will thus be remanded to the New York State Supreme Court, Ontario County, and this Court's role in this dispute has now run its course.

Therefore, it is

14


ORDERED THAT

1. Defendants' cross-motion to transfer this case to the Bankruptcy Court is DENIED;

2. Plaintiff Tailored Fund Cap LLC's motion to remand is GRANTED; and

3. The complaint is REMANDED to the New York State Supreme Court, Ontario County.

IT IS SO ORDERED.

The Clerk of the Court is directed to forward a copy of this decision and the file in this matter to the Clerk of the New York State Supreme Court, Ontario County and close the file.

Dated: October 29, 2020
Utica, New York.

David N. Hurd
U.S. District Judge